IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS GOTAY-GUZMAN,

    Petitioner,

    v.

UNITED STATES OF AMERICA

    Respondent.

CIV. NO.: 16-2662 (ADC/SCC)

**REPORT AND RECOMMENDATION**

On March 4th, 2015, Mr. Carlos Gotay Guzman, ("Gotay") was charged with conspiracy to distribute controlled substances; aiding and abetting in the distribution of heroin, cocaine, and marihuana; possession of firearms in furtherance of a drug trafficking crime; and conspiracy to commit money laundering. *See* Docket No. 3 of Crim. No. 15-162.[1] The indictment identifies Gotay as the main leader of a drug

---

[1] The case was originally presided by Judge Fusté, and was later transferred to Judge Aida Delgado-Colón.

Civ. No. 16-2662 (ADC/SCC)                                    Page 2 of 18

trafficking organization operating out of the Enrique Zorrilla Public Housing Project in Manatí, Puerto Rico. *See* Docket No. 3 at pg. 11.

Gotay pled guilty to Counts One and Six pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(A) and (B). *See* Docket No. 665. He was sentenced to 165 months as to Count One and to 60 months as to Count Six, to be served consecutively. *See* Docket No. 1202.

Gotay attacks the sentence through a *pro se* motion under 28 U.S.C. § 2255, alleging ineffective assistance of counsel. *See* Docket No. 1. On August 6, 2018 the Presiding Judge granted Gotay's request and appointed counsel to represent him. *See* Docket No. 20.

The § 2255 petition was referred to the undersigned for a hearing, report and recommendation. The hearing was held on November 6, 2018. *See* Docket No. 30. Gotay testified on his behalf and his wife's testimony was proffered and deemed cumulative by the Court. Atty. Castro Lang testified on behalf of the government. For the reasons set forth below, I recommend that the petition be denied.

Civ. No. 16-2662 (ADC/SCC)                              Page 3 of 18

### I. Findings of Fact

Gotay pled guilty to Counts One and Six of the Indictment pending against him in Criminal Number 15-162. Count One charged him with participating in a drug conspiracy that spanned for approximately 15 years, within 1,000 feet of a protected location, in violation of 21 U.S.C. §§ 841 (a)(1), 846 & 860. Count Six charged him with possessing firearms in furtherance of the drug trafficking crimes charged in Counts One through Five[2], in violation of 18 U.S.C. § 924 (c).

The parties agreed in the plea agreement that defendant would be held accountable to at least 5 but less than 15 kilograms of cocaine. As to Count One and pursuant to the U.S. Sentencing Guidelines, the Base Offense Level would be 30; 2 points were added for the offense to take place within 1,000 feet of a protected location; 3 points were added for defendant's role in the offense; and 3 points were deducted for acceptance of responsibility.[3] The parties agreed that the

---

[2] Gotay was charged in six counts of the 8-Count Indictment.
[3] USSG §2D1.1 (c)(2) & §2D1.1(a)(5); 2D1.2(a)(1);3B1.1(c); 3E1.1(a) & (b).

Civ. No. 16-2662 (ADC/SCC)                                   Page 4 of 18

United States would request a sentence within the applicable guideline range and the defense at the lower end. *See* Exhibit 1 at pg. 5.

As to Count Six the parties agreed that Mr. Gotay would serve a 60-month term of imprisonment, which is the statutory minimum for an 18 U.S.C. §924 (c) offense, consecutive to the term of imprisonment imposed for Count One.

The parties did not stipulate Mr. Gotay's criminal history category and the presiding judge at that time, Judge Fusté, added a handwritten note to the plea agreement stating that if the criminal history was calculated at level II because of some misdemeanor convictions, Mr. Gotay would have the right to argue over -representation at sentencing. With a total adjusted offense level of 32 and a criminal history category of I the defendant would have had the right to argue for a sentence of 121 months for Count One. The government, on the other hand, would have had the right to argue for a sentence between 121 and 151 months. As to Count Six, Mr. Gotay would serve the statutory minimum of 60 months

consecutively. Mr. Gotay waived his right to appeal if sentenced within the applicable guideline range. *See* Plea Agreement, Exhibit 1, at ¶ 10, pg. 6.

In the presentence report ("P.S.R.") Mr. Gotay is identified as the main leader of the Drug Trafficking Organization, (D.T.O.). *See* Presentence Report at pg. 17, Crim. No. 15-162, Docket No. 938. As main leader, the P.S.R adds 4 points in the Supervisory Role pursuant to USSG §3B1.1(c). The rest of the guideline calculation is parallel to the calculation agreed by the parties in the plea agreement. The Total Adjusted Offense Level in the P.S.R is 33, whereas in the Plea Agreement is 32. As to the Criminal History category the P.S.R calculation yielded a Criminal History Category of II.

Mr. Gotay was sentenced to 165 months as to Count One and Sixty months as to Count Six to be served consecutively to each other for a total imprisonment term of 225 months.

Mr. Gotay stated at the hearing that he was satisfied with his legal representation up to and until the sentencing hearing. He argued that his claim under § 2255 stems from his lawyer's failure to argue over-representation in the

calculation of the Criminal History Category; in his failure to argue for the additional point added in the role in the offense calculation; and in his failure to file a notice of appeal. Mr. Gotay stated that when Atty. Castro Lang visited him after the sentence he told him to file a notice of appeal. Mr. Gotay unequivocally stated at the hearing that he wanted to appeal his sentence and that he had his wife convey this request to Atty. Castro Lang in a subsequent conversation. According to the proffer, Mr. Gotay's wife, Zuleyka Gotay, would have corroborated this.

It is Gotay's position that Atty. Castro Lang's failure to argue the over-representation in his criminal history category computation with the additional point added for role in the offense, paired with a criminal history category of II, yielded a range of 135-168 months as to Count One. When combined with the sixty months to be served for Count Six, Mr. Gotay claims that he ended up receiving a sentence of 44 months over what he expected.

Atty. Castro Lang on the other hand testified that he diligently represented Mr. Gotay and negotiated for him a

Civ. No. 16-2662 (ADC/SCC) Page 7 of 18

very favorable plea, given his role in the offense, the span of the conspiracy, the amount of narcotics, and the possible cross references to murders attributed to the DTO. He further added that he indeed argued for a calculation of criminal history category of I and could not argue for 3 points in the role of the offense category given Mr. Gotay's position as number one in the DTO. Atty. Castro Lang stated that he had negotiated for 3 points in the calculation of role in the offense while negotiating the plea agreement but could not argue that the P.S.R was incorrect, nor did he file objections to the P.S.R.

Atty. Castro Lang stated that this was a plea under Fed. R. Cr. Proc. 11(c)(1)(A) and (B), thereby, giving the Court discretion over the sentence to be imposed. Furthermore, he testified that the sentence imposed was within the applicable guideline range, and that the appeal had no merit, since Mr. Gotay had waived his right to appeal if sentenced in accordance with the plea agreement. [4]

---

[4] Atty. Castro-Lang stated that he has vast experience, is a successful trial and appellate lawyer and has won more cases on appeal than any other

Civ. No. 16-2662 (ADC/SCC)                                    Page 8 of 18

During cross examination Atty. Castro Lang was questioned on his failure to formally object to the P.S.R. and the categorization of Mr. Gotay's criminal history as II. The parties' pointed to excerpts of the transcript of the sentencing hearing, which in fact must be read in its totality to have a clear picture of what transpired during the sentencing hearing.

Atty. Castro Lang stated during the sentencing hearing that he did not object to the 4-point calculation of Mr. Gotay's role in the offense because it was legally correct and supported by the facts. He further argued that the Judge should follow the plea agreement on the guideline calculation and that 18 U.S.C. § 3553 factors weigh in favor of a more lenient sentence. An unusual exchange ensued in which the Court for all practical matters negotiated with Atty. Castro Lang and lowered the original intended sentence of 170 months as to Count I to 165 months with the consecutive 60 months for the 924 (c) Count.

---

lawyer and that he would never file a meritless appeal or make an argument if its legally unsound.

Civ. No. 16-2662 (ADC/SCC) Page 9 of 18

With this factual background, we analyze if Atty. Castro Lang was ineffective and whether, but for his errors in Mr. Gotay's representation, the outcome of the proceedings would have been different.

## II. Arguments

§ 2255 allows a federal prisoner to move the court to vacate, set aside, or correct his sentences if one of the following events happens: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law or; (4) the sentence is otherwise subject to collateral attack."

Motions to Vacate based on ineffective assistance of counsel require petitioner to show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to succeed in his claim of ineffective assistance of counsel, Gotay must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2)

Civ. No. 16-2662 (ADC/SCC) Page 10 of 18

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Argencourt v. United States*, 78 F. 3d 14, 16 (1st Cir. 1996).

To satisfy the first prong of the *Strickland* test, the Petitioner must show that "in light of all the circumstances, the identified acts or omissions [allegedly made by his counsel] were outside the wide range of professionally competent assistance." *Tejada v. Dubois*, 142 F.3d 18, 22 (1st Cir. 1998) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smullen v. United States*, 94 F.3d 20, 23 (1st Cir. 1996) (quoting *Strickland,* 466 U.S. at 689).

First, we will address the issue of failure to argue the over-representation of Mr. Gotay's criminal history category computation, and his role in the offense. Having examined the parties' arguments, and the record of Mr. Gotay's criminal proceedings, we are convinced that Atty. Castro Lang dutifully addressed both matters. Although counsel did not

Civ. No. 16-2662 (ADC/SCC)                                      Page 11 of 18

file an objection to the P.S.R to seek a re-calculation of Mr. Gotay's criminal history category, or his role in the offense, his proffered reasons for not doing so are entirely valid. The P.S.R's computation of Mr. Gotay as a level II offender, and as a supervisor in the criminal enterprise, is legally and factually correct. To argue otherwise, as Atty. Castro Lang expressed during the §2255 hearing, would have misled the Court. During the Sentencing hearing, Atty. Castro Lang also delved on the issue when he told the Court:

> Obviously there is -- in terms of the calculation of the guideline, there is a one point difference between the Plea Agreement and the PSR. The PSR awarded the defendant four levels for his role in --supervisory role. The Plea Agreement calls for three.
> Obviously, Your Honor, I couldn't object to the four, because quite frankly the probation officer had a factual basis to impose a four. But at the same time, I believe that the Court also has the discretion to apply the three level, which also applies in these type of cases where there are five or more defendants.

*See* Transcript of Sentencing Hearing, Docket No. 1702, pg. 3, lines 25-25, and pg. 4, lines 1-9.

Civ. No. 16-2662 (ADC/SCC)                          Page 12 of 18

    Moreover, the lower calculation contained in the plea agreement was merely a suggestion, since the parties' agreement did not stipulate the criminal history category. Even so, at the sentencing hearing, Atty. Castro Lang urged the Court to depart from the P.S.R.'s criminal history calculation, and exercise its discretion to sentence defendant as a level I, not level II. *See* Transcript of Sentencing Hearing, Docket No. 1705, at pg. 4, lines 10-17; pg. 7, lines 21-25; pg. 8, lines 1-7; pg. 13, lines 1-6.[5]

    Though perhaps not as vehemently as his client had hoped, Atty. Castro Lang nonetheless argued that his client

---

[5] MR. CASTRO LANG:

And obviously, I think that the Court needs to look at the whole picture when determining the appropriate sentence. 18 U.S. Code 3553 states clearly that the Court should impose a sentence that is sufficient but not greater than necessary. And certainly we feel that the Plea Agreement negotiated with the Government takes into account the substantial amount of incarceration time that this defendant is facing.
*See* Dkt. No. 1705 at pg. 4, lines 10-17.

should be sentenced in accordance with the plea agreement, which stipulated a Total Adjusted Offense Level of 32.

In light of these facts, we are unconvinced that Atty. Castro Lang's conduct was subpar. Petitioner has thus failed to establish the first prong of the *Strickland* test.

The prejudice prong is likewise not met. There is no indication that if Atty. Castro Lang had formally objected to the P.S.R.'s on-point level II computation, and determination that Mr. Gotay had a supervisory role, Judge Fusté would have disregarded it and sentenced Mr. Gotay as a category I offender with a base offense level of 32. Mr. Gotay has not elucidated how the result of the proceedings was rendered "fundamentally unfair or unreliable" by Atty. Castro Lang's actions. *Scarpa v. Dubois*, 38 F.3d 1, 16 (1st Cir. 1994)(citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993))(For the purpose of establishing *Strickland's* second prong, the analysis must encompass "outcome determination," as well as "whether the result of the proceeding was fundamentally unfair or unreliable.").

Therefore, the prejudice inquiry does not turn on Mr. Gotay's favor.

The second error that Mr. Gotay attributes to Atty. Castro Lang involves his right to appeal a sentence of conviction. Atty. Castro Lang recognized that Mr. Gotay was initially adamant in his desire to purse an appeal but explained that after discussing the pros and cons—including Atty. Castro-Lang's opinion that an appeal would not be successful— he thought that Mr. Gotay had been dissuaded. Mr. Gotay, however, testified that he even asked his wife to call Atty. Castro-Lang to reiterate his request for an appeal. Upon hearing his client's testimony, Atty Castro Lang stated that perhaps he misunderstood Mr. Gotay and that he would not have hesitated in filing an appeal had there been an explicit request to that effect, notwithstanding his own views on its potential success.

When it comes to appellate proceedings, an attorney has an ethical obligation to refuse to pursue frivolous arguments. *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988). Whereas at the trial level defense counsel has an

obligation to prevent that the "stigma of guilty" attach to the client until the government presents proof beyond a reasonable doubt, at the appellate level, the "defendant is no longer protected by the presumption of innocence." *McCoy*, 486 U.S. at 435. Hence, an attorney pursuing an appeal cannot "consume the time and the energies of the court or the opposing party by advancing frivolous arguments." *Id.* at 436. The Supreme Court has explained that the way to reconcile an attorney's duty to advocate for his client, with his own professional views on the merits of an appeal, is to inform the court and ask for leave to withdraw. *Id.* at 437.

Atty. Castro Lang did not follow that path. Because he believed that his client no longer wanted an appeal, he refrained from pursuing one. In our view, Atty. Castro Lang's perception of his client's wishes clashed with his client's direct instructions. Based on the testimony of Gotay, and the proffered testimony of his wife, we conclude that the petitioner did not merely suggest, but specifically asked, Atty. Castro Lang to file an appeal.

Generally, a "lawyer who disregards specific instructions from [a] defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *U.S. v. Barrett*, Nos. CR 10–062 ML, CR 10–135 ML, 2015 WL 4920803, at *5 (D.R.I. Aug. 18, 2015) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000)). But where, as here, a plea agreement includes a waiver of appeal, the defendant who signed it knowingly and voluntarily is bound by its terms. *Santos-Martinez v. U.S.*, 115 F.Supp. 3d 254, 259 (D.P.R. 2015). Mr. Gotay was sentenced in accordance with the sentence recommendations contained in the plea agreement, s*ee* Docket Nos. 665 at pg. 6 and 1202, and he has not challenged the enforceability of his waiver.[6] Under such circumstances, we cannot classify Atty. Castro Lang's actions as egregious for failing to preserve a right that his client had renounced.

---

[6] During the change of plea hearing, the Court emphasized that as part of the plea agreement, Mr. Gotay would be required "to waive his right to appeal under certain circumstances." Mr. Gotay responded that he understood. *See* Docket No. 1706 at pg. 14, lines 12-16.

Civ. No. 16-2662 (ADC/SCC) Page 17 of 18

Because we find that petitioner has not made his burden under *Strickland* on either of his claims of ineffective assistance, we recommend that the motion at Docket No. 1 be denied.[7]

### III. Conclusion

For the reasons stated herein, I recommend that the Presiding Judge deny Petitioner's request for relief at Docket No. 1.

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d

---

[7] At the §2254 hearing, the government suggested that the Court should allow Mr. Gotay to file a delayed appeal. The government cited a case, *Campbell v. U.S.*, 686 F.3d 353 (2012), in which the Sixth Circuit remanded to the district court with specific instructions to hold a hearing to determine whether defendant's attorney failed to file an appeal and if so, to grant leave to file a delayed appeal. *Campbell*, 686 F.3d at 360. We did not find case law from this Circuit to support such an alternate form of relief, and thus, we do not include it as part of our recommendations to the Presiding Judge.

143,150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 13th day of December, 2018.

                S/ SILVIA CARREÑO-COLL
                UNITED STATES MAGISTRATE JUDGE