THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CARLOS GOTAY-GUZMAN**

   **Petitioner,**

   v.

**UNITED STATES OF AMERICA,**

   **Respondent.**

**Civil No. 16-2662 (ADC)**
**[Related to Crim. No. 15-162-1 (ADC)]**

**OPINION AND ORDER**

Before the Court are: (i) Carlos Gotay-Guzmán's ("petitioner"or "Gotay") petition to vacate, set aside or correct sentence by a person under federal custody under 28 U.S.C. §2255 ("2255 petition"), **ECF No. 1**; (ii) respondent United States of America's ("the government") response to Gotay's 2255 petition, **ECF No. 10**; (iii) Report and Recommendation ("R&R") by United States Magistrate-Judge Silvia Carreño-Coll ("Magistrate-Judge"), **ECF No. 31**; and (iv) Gotay's motion to supplement objections to the R&R, **ECF Nos. 40, 41**. For the reasons discussed below, the Court, while adopting the factual determinations, **REJECTS** the recommendation within the R&R, **GRANTS** Gotay's 2255 petition, and **GRANTS** a certificate of appealability.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

   **A. In General**

The following factual and procedural account is fully adopted from the R&R. **ECF No. 31** at 1, 2. On March 4, 2015, Gotay was charged with conspiracy to distribute controlled substances;

aiding and abetting in the distribution of heroin, cocaine, and marijuana; possession of firearms in furtherance of a drug trafficking crime; and conspiracy to commit money laundering. *See* **Crim. 15-162, ECF No. 3**. The indictment identified Gotay as the leader of a drug trafficking organization operating out of the Enrique Zorrilla Public Housing Project in Manatí, Puerto Rico. *Id*, at 11. Gotay pled guilty to Counts One and Six of the eight-count indictment pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(A) and (B). *See* **Crim. No. 15-162, ECF No. 665.** He was sentenced to 165 months as to Count One and to 60 months as to Count Six, to be served consecutively. *See Id*, **ECF No. 1199**. Judgment was entered on November 5, 2016. *See Id* **ECF No. 1202.**

On September 9, 2016, Gotay filed a pro - se petition to vacate, set aside, or correct the aforementioned sentence under 28 U.S.C. §2255 alleging ineffective assistance of trial counsel Rafael Castro-Lang ("Counsel"). **ECF No. 1**. On August 6, 2018, the presiding judge[1] granted Gotay's request to appoint counsel to represent him. **ECF No. 20.** The 2255 petition was referred to a Magistrate-Judge for an evidentiary hearing and report and recommendation. **ECF Nos. 15, 17**.

On November 6, 2018, the Magistrate-Judge held an evidentiary hearing. *See* **ECF Nos. 30, 37.** Gotay testified on his behalf and with the government's acquiescence, his wife's testimony was proffered. Trial counsel testified on behalf of the government. *Id*. On December

---

[1] The case was originally presided by United States District Judge José A. Fusté ("Judge Fusté"). On May 5, 2016, upon Judge Fusté's retirement, it was transferred to the undersigned's docket. **CRIM. 15-162, ECF No. 1586.**

13, 2018, Magistrate-Judge Carreño issued an R&R holding that Gotay had failed to meet his burden under *Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("*Strickland*") for failing to meet the prejudice standard and recommended the denial of Gotay's petition. Gotay filed objections to the R&R. **ECF Nos. 40, 41.**

### B. The Plea Agreement

Petitioner entered a guilty plea to Count One (charging a conspiracy to possess controlled substances with intent to distribute) and Count Six (charging the illegal possession of a weapon in furtherance of a drug trafficking crime). Both counts carried mandatory minimum penalties of ten (10) and five (5) years, respectively to run consecutively as provided by statute. *See* 21 U.S.C. 841(a)(1), 846 and 18 U.S.C. § 924 (c)(1)(A)(i).

The parties stipulated to a sentencing guideline calculation that provided for a base offense level of 30, inasmuch the stipulated drug quantity was that of "at least 5 kilograms, but less than 15 kilograms of cocaine" pursuant to USSG § 2D1.1(c)(2) and 2D1.1(1)(5). Further, defendant's supervisory role was stipulated, and a 3-points enhancement allocated pursuant to USSG §3B1.1(c). Considering that the offense had taken place within a protected location, 2 additional points were added pursuant to USSG § 2D1.2(a)(1). Given defendant's acceptance of responsibility and the corresponding three points adjustment, the stipulation provided for an adjusted offense level ("AOL") of 32.

While no criminal history category was stipulated, during the Rule 11 hearing it was further stipulated by the parties that if the probation officer was to finally determine a "Criminal

History II,"[2] due to some misdemeanor convictions, defendant could argue overrepresentation of the Criminal History. **ECF No. 665** at 5.

Finally, relevant to petitioner's claim, the plea agreement provided that the government[3] was to request "a sentence within the applicable guideline range," wherefore the defense could then argue for a "sentence at the lower end of the applicable guideline range." **ECF No. 665 at 5**. Of course, defendant was made aware of the mandatory minimum sentence as to each count and the statutory requirement that sentences on each count were to be consecutive. If sentenced in accordance to the parties' stipulation, defendant in turn, agreed to waive his right to appeal the judgment and sentence in the case.[3]

### C. The Sentence

On November 5, 2015, defendant appeared before the Court for sentencing. Prior to sentencing, no formal written objection to the pre-sentence report had been filed. At sentencing, counsel began by acknowledging that contrary to the parties' stipulation, the probation officer had allocated a Four (4) point rather than three (3) point enhancement given defendant's role in the offense. While acknowledging he did not have a factual basis to formally object to such enhancement, defense counsel urged the sentencing court to adhere to the parties' stipulation within the plea agreement. **ECF No. 1705** at 3-6.

---

[2] This last stipulation appears as handwritten by the presiding judge within the plea agreement document.

[3] *See* **ECF No. 665,** par. 7-10.

Defense counsel then proceeded to argue that while the Criminal History Category had been determined as a CHC II, on account of a previous misdemeanor conviction, the Court had the discretion to impose a sentence not harsher than necessary and even if to sentence as if under a CHC II, the court should allocate the stipulated three points given defendant's supervisory role. *Id* at 8-14. Defense counsel ended by requesting as to Count one, a sentence within a range of 121 to 151 months of imprisonment. Defense counsel ended requesting a sentence of 15 years and one month (that is, 121 months as to Count I and 66 months as to Count VI).[4]

The government issued a recommendation for a sentence within a range of 138 to 168 (given defendant's CHC of II) and argued for a sentence at the upper level of the applicable guideline range;[5] this is: 168 months of imprisonment as to Count I and 60 months as to Count VI, consecutive to the sentence in Count I for a total 228 months. **ECF No. 1705** at 19-20.

Considering an AOL of 33 and a CHC II, the sentencing court determined that the applicable imprisonment range was from 151 to 188 months. *Id* at 37. Initially, a sentence of 170 months of imprisonment was imposed as to Count I, followed by a consecutive 60 months term as to Count VI.[6] Both parties pointed to the sentencing court that pursuant to the plea agreement

---

[4] A sentence of 121-151 months was a sentence under an AOL of 32 and a CHC I.

[5] The government alluded to defendant being the main leader and heroin supplier of the organization since 2008, and that the organization had at least 61 other members charged.

[6] The defense at his juncture brought to the Court's attention that the sentence as to Count I exceeded the upper range of the applicable guidelines range under AOL of 32 and CHC I: 135-168 months. **ECF No. 1705** at 40-41.

Case 3:16-cv-02662-ADC Document 43 Filed 03/30/20 Page 6 of 15
Crim. No. 16-2662 (ADC)                                                                                          Page 6

and under the applicable guideline range, the maximum sentence for Count I was 168 months. **ECF No. 1705** at 45.

The court proceeded to inform defendant of his right to appeal from the judgment of conviction and sentence. While requesting reconsideration of judgment, counsel urged and requested that the court impose a sentence of 151 months (middle range under AOL 32) as to Count I which would result in a waiver of appeal right pursuant to the plea agreement. *Id* at 43. The sentencing court reconsidered and while imposing sentence stated: (as to Count I) a sentence of "165, rather than 170. And then of course the- I will recognize, if he wants to, to take the matter on appeal. And I warn him what his rights are as to that." **ECF No. 1705** at 46.

### C. Petitioner's Claims

Petitioner asserts that counsel provided ineffective assistance of counsel on different grounds:

(a) By failing to file formal objections to the pre-sentence report,

(b) failing to argue at sentencing for the overrepresentation of his CHC and the additional point on account of his leadership role and,

(c) for not adhering to his request and petition for counsel to appeal from the judgment and sentence. **ECF No. 1.**

### D. The Evidentiary Hearing and the Magistrate-Judge's determination

Petitioner and petitioner's wife alluded to several conversations held with trial counsel in which petitioner expressed disagreement with the sentence imposed and directly asked

counsel to appeal from the sentence. Actually, at defendant's request the spouse had contacted trial counsel to request and inquire about the appeal process.

Trial counsel acknowledged that petitioner directly requested him to appeal but alluded to an existing good faith confusion, that he understood originated by the fact that while he had explained to defendant why he considered such an appeal meritless, he never directly inquired or assessed his ultimate desire and consequently, assumed that defendant had accepted his views and legal assessment.

At the evidentiary hearing and during cross-examination, trial counsel admitted the following facts:

(a) not having filed formal objections to the Four level enhancement for leadership role (**Civil 16-2662 ECF No. 37** at 55),

(b) had not argued as such, for overrepresentation, of the CHC inasmuch as, he considered the computation within the PSR correct, and

(c) having no doubts that Gotay was interested on an appeal. However, since after discussing the merits of a possible appeal, defendant did not tell him to "appeal anyway,", he had mistakenly construed such silence as petitioner's acquiescence. **Civil No. 16-2662, ECF No. 37** at 48-49.

The Magistrate-Judge concluded that trial counsel had not provided ineffective assistance of counsel given defendants failure to establish that counsel's representation was sub par and because the prong of prejudice under *Strickland* had not been met since Gotay had not

established that a different result would have been achieved if attorney Castro-Lang had formally objected to the sentencing adjustments reflected within the pre sentence report.

As it relates to counsel's failure to appeal, the Magistrate-Judge, citing *Roe v Flores-Ortega*, 528 U.S. 470, 477 (2000), acknowledged that a 'lawyer who disregards specific instructions from [a] defendant to file a notice of appeal acts in a manner that is professionally unreasonable." **Civil No. 16-2662, ECF No. 31** at 16. Nonetheless, the Magistrate-Judge proceeded to determine that both counsel and defendant were bound by the "waiver of appeal" stipulation within the plea agreement. *Id*.

Petitioner Gotay filed a timely objection to the Magistrate-Judge's factual determination and recommendations to have his §2255 petition denied. **ECF No. 44**. In essence, petitioner bases his objections to the R&R (issued in December 2018) in *Garza v. Idaho*, 139 S. Ct. 738, case decided on February 27, 2019.

## II. STANDARD OF REVIEW

A District Court may refer pending motions to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72. Any party adversely affected by the recommendation issued may file written objections within fourteen days of its receipt. 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F. Supp.2d 189, 191–92 (D.P.R. Aug. 31, 2005) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)). Failure to comply with this rule may

preclude further review by the district court and the court of appeals. *See Santiago v. Canon U.S.A. Inc.*, 138 F.3d 1, 4 (1st Cir. 1998); *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992).

Thus, a party objecting to a report and recommendation is "not entitled to a *de novo* review of an argument never raised" before the magistrate judge and such arguments are deemed to be waived. *Borden v. Sec. of Health and Human Serv.*, 836 F.2d 4, 6 (1st Cir. 1987). *See Entact Servs., LLC v. Rimco, Inc.*, 526 F. Supp.2d 213, 223 (D.P.R. Nov. 20, 2007) ("[N]ew arguments, or new known evidence, are to be excluded as reconsideration arguments originally available to movant at the time of the submission to the Magistrate Judge.").

The waiver also applies to preclude *de novo* review by the Court of arguments a party introduced but failed to properly develop before a magistrate judge. "[A] litigant has an obligation to spell out its argument squarely and distinctly, or else forever hold its peace." *Rivera-Gómez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (quotation omitted). That is, "[i]f claims are merely insinuated rather than actually articulated in the trial court, [The First Circuit Court of Appeals] will ordinarily refuse to deem them preserved for appellate review." *Curet-Velázquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 54 (1st Cir. 2011) (finding argument waived where appellants mentioned in passing before the magistrate judge facts that might have been used to support the argument they later sought to develop on appeal).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(a)(b)(1); *see*

*Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985); *Alamo Rodríguez v. Pfizer Pharm., Inc.*, 286 F. Supp.2d 144, 146 (D.P.R. Sept. 30, 2003).

## III. DISCUSSION

Based on Supreme Court precedent under *Garza* and the clear statements of the First Circuit Court of Appeals in *Rojas-Medina v. United States*, 924 F.3d 9 (2019), the Court departs from the Magistrate-Judge's recommendation and **GRANTS** petitioner's §2255 claims.[7]

To succeed on a 28 USC §2255 claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first requirement necessitates a demonstration that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citations and internal quotation marks omitted).

When an ineffective assistance claim is based on a failure to appeal, the Supreme Court has set forth different standards for deficient performance depending on defendant's conduct. If the defendant "explicitly tells his attorney not to file an appeal," he "plainly cannot later

---

[7] The rulings in *Garza* and *Rojas-Medina* makes it unnecessary to address whether counsel rendered ineffective assistance for not directly objecting to petitioner's adjustment given his role in the offense and the CHC assessment within the P.S.R.

complain that, by following his instructions, his counsel performed deficiently." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). However, if the defendant tells his lawyer to appeal and his lawyer fails to do so, the lawyer has "acted in a manner that is professionally unreasonable." *Id*.

"In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," the Court must ascertain whether counsel consulted with defendant by "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. If counsel consulted with defendant, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id*. However, if counsel has not consulted with defendant, the Court must look to whether "a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) [ ] this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. In either of these circumstances, counsel has a constitutional duty to consult with the defendant.

> [A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. *Id*.

As to the second prong of the Strickland test, that of prejudice, a "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.

Here, it remains undisputed based on in-court testimony that immediately after the sentence, defendant asked counsel to appeal. The next day counsel visited petitioner and counsel narrates what happened at that meeting as follows:

> Q:[8]  Did you speak to Mr. Gotay Guzmán after he was sentenced?
> A:  Yes, I did and, in fact, he –- I visited him and he called me and he mentioned to me that he was interested on an appeal. He wanted to appeal his case and I discussed it with him. I said, "Look, I think it's a waste of time for you to appeal because the Judge sentenced you within the applicable guideline range of your original plea of adjusted level thirty-two, criminal history category of two", which he was aware he could get. So, he had a guideline . . .
> Q:  All right. Let's go back to the discussion after you met with Mr. Gotay Guzmán –-
> A:  Yes.
> Q:  –- and you explained to him that an appeal may not be worth the effort. What was the decision at that meeting? . . .
> A:  So, I told him, "Look, I can't recommend to you an appeal. I think it would be a waste of time". Now, here is where there may be some misunderstanding. He never told me, "Appeal anyway." He never said, "Appeal anyway." If he had told me, "Appeal anyway," I can assure you, Your Honor, that my secretary would have pushed the button in my computer and a Notice of Appeal would have been filed on his behalf. But, perhaps there was a misunderstanding since he –-and here is where I think that he should be given the benefit of the doubt and that he should be allowed to appeal because maybe he thought that by telling me that, "I'm interested in appeal", that that meant that I had to file an appeal and I thought that after I explained to him that it was a waste of time and him not telling me, "Appeal anyway", that he was accepting my explanations to him. And, there's room for –- there's room there for misunderstanding and since the First Circuit has recognized that the right of an appeal is something that should never be denied, I think that because there's room for that misunderstanding, that this Court should allow him

---

[8] Assistant United States Attorney Edward Veronda asked the questions in the sequence quoted above.

> to appeal. I don't think it's going anywhere, but I think that the Court should allow him to appeal.

**ECF No. 37** at 45-50. The Magistrate-Judge deemed the above testimony to be credible.

After sentencing as well, counsel was contacted by petitioner's wife who wanted to inquire on the status of petitioner's appeal. The record also reflects that upon reaching the designated penal institution, petitioner contacted counsel and reviewed the case's record to assert the appeal status. Upon finding that no appeal had been filed, petitioner decided to pursue the instant §2255 petition.

Based on the evidence on record, it is clear that defendant wanted to appeal his sentence and that he directly instructed counsel to do so. While true that counsel provided defendant with legal advice regarding what he honestly understood were the chances of success of such appeal, as required by Flores-Ortega, counsel failed to clearly ascertain from petitioner what his final determination was. It s clear from the record that still after receiving counsel's legal advice, petitioner understood an appeal was to be filed and conducted inquiries on the status of such an appeal upon reaching his designated place of confinement. Consequently, regardless of whether a rational defendant would want to appeal, petitioner Gotay has demonstrated that he was interested in appealing.

In this particular case, the Magistrate-Judge recognized that petitioner was not sentenced pursuant to the guideline calculations (based on a CHC of II) within the plea agreement. More so, the Magistrate-Judge recognized that in disregarding petitioner's specific instructions and

demands, counsel's actions were "professionally unreasonable." **ECF No. 31** at 16. Nonetheless, based on the fact that there was no stipulation within the plea agreement as to the CHC and considering that there was a "waiver of appeal" stipulation within the plea agreement, the §2255 petition was to be denied given petitioner's failure to "challenge the enforceability of his waiver." *Id*.

Gotay timely objected to the Magistrate-Judge's determinations. **ECF No. 40.** In Garza, the Supreme Court held that counsel renders deficient performance by not filing a notice of appeal upon clear request by defendant and that such deficient performance if presumptively prejudicial despite a waiver of appeal stipulation. On May 16, 2019, the First Circuit Court of Appeals in *Rojas-Medina* followed suit and for the first time, applied the Flores-Ortega presumption of prejudice in circumstances in which defendant had previously executed a plea agreement containing a waiver of appeal provision.

## IV. CONCLUSION

For the above stated reasons and having scrutinized the evidence on record, the Magistrate-Judge's recommendation is not adopted, petitioner's § 2255 is **GRANTED and d**efendant right to appeal is reinstated.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In light of the case's particular factual and procedural circumstances, a COA is hereby **GRANTED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2020.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**